UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UBRONA COGER,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY[1],

                Defendant.
_____

**DECISION AND ORDER**

1:17-CV-00741 EAW



## INTRODUCTION

Represented by counsel, Plaintiff Ubrona Coger ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 13). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 10) is denied.

---

[1] As of the date of this Decision and Order, Nancy A. Berryhill, the Defendant named by Plaintiff in this matter, is no longer the Acting Commissioner of Social Security. No successor has been named in her place. The Clerk of Court is therefore instructed to substitute the "Commissioner of Social Security" as the Defendant, in accordance with Federal Rule of Civil Procedure 25(d).

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on September 26, 2013. (Dkt. 7 at 109-10).[2] In her applications, Plaintiff alleged disability beginning April 1, 2010, due to arthritis, fibromyalgia, back problems, and depression. (*Id.*). Plaintiff's applications were initially denied on December 17, 2013. (*Id.* at 132-46). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Connor O'Brien in Rochester, New York, on October 7, 2015. (*Id.* at 62-106). On April 26, 2016, the ALJ issued an unfavorable decision. (*Id.* at 21-48). Plaintiff requested Appeals Council review; her request was denied on June 8, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[2] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on March 31, 2012. (Dkt. 7 at 26). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since April 1, 2010, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "ulnar nerve repair of the left wrist status post December 22, 2010 motor vehicle accident; bilateral median neuropathy of the bilateral wrists, left greater than right; myalgia and Sjorgren's syndrome; recurrent headaches; recurrent chronic pain in ankles post-MVA; obesity; depressive disorder; anxiety disorder; and, cannabis use." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of pelvic inflammatory disease, endometriosis, and polycystic ovarian syndrome were non-severe. (*Id.* at 27). With respect to Plaintiff's representations that she suffered from fibromyalgia, rheumatoid arthritis, and systemic lupus erythematosus, the ALJ concluded that these were not medically determinable impairments. (*Id.* at 27-29).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 29). The ALJ particularly considered the criteria of Listings 1.02B, 12.04, 12.06, and 14.10 in reaching her conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (*Id.* at 29-33).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> is capable of sitting for up to six hours in an eight-hour workday; standing and/or walking for up to six hours in an eight-hour workday; and can lift and/or carry up to ten pounds frequently and twenty pounds occasionally. [Plaintiff] requires a sit/stand option that allows her to change position every 90 minutes for up to 5 minutes without leaving the workstation. She cannot balance on narrow, slippery or moving surfaces. She can occasionally stoop, crouch, climb, kneel and crawl. She can frequently, but not constantly, finger and handle, bilaterally. She can perform simple and detailed tasks, but not complex tasks. She can adjust to occasional changes in the work setting.

(*Id.* at 33). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 42).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of counter clerk and surveillance system monitor. (*Id.* at 43-44). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 44).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred in weighing the medical opinion of treating nurse practitioner ("NP") Marcel Rozario, and (2) the ALJ failed to properly assess the credibility of Plaintiff's subjective

complaints. The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A. Weighing of NP Rozario's Opinion

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not considered "acceptable medical sources," and their opinions are therefore not "entitled to any particular weight[.]" *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017) (quotations omitted). Nevertheless, an ALJ should consider evidence from "other sources," such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects. *See* SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006); *Glena v. Colvin*, No. 1:15-CV-00510(MAT), 2018 WL 739096, at

*3 (W.D.N.Y. Feb. 6, 2018) ("Nurse practitioners are defined as 'other sources' under the Regulations; they do not constitute 'acceptable medical sources' . . . . Nevertheless, SSR 06-3p recognizes that 'other source' opinions are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.") (internal quotation omitted). An ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").

In this case, NP Rozario, who had treated Plaintiff for several years, issued multiple opinions with regard to Plaintiff's functional capabilities. On June 21, 2013, NP Rozario completed a New York State Office of Temporary and Disability Assistance ("NYSOTDA") Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination form related to Plaintiff. (Dkt. 7 at 606-607). On this form, NP Rozario checked boxes indicating that Plaintiff was "very limited" in her abilities to lift, carry, push, pull, bend, use her hands, and climb, "moderately limited" in her abilities to walk and stand, and had "no evidence of limitations" in her abilities to sit, see, hear, and speak. (*Id.* at 607).

On September 17, 2014, NP Rozario completed another NYSOTDA form related to Plaintiff. (*Id.* at 455-56). This time, NP Rozario checked boxes indicating that Plaintiff

was "very limited" in her abilities to stand, sit, lift, carry, push, pull, bend, see, hear, speak, use her hands, and climb, and "moderately limited" in her ability to walk. (*Id.* at 456).

On March 19, 2015, NP Rozario completed yet another NYSOTDA form related to Plaintiff. (*Id.* at 570-71). On this form, NP Rozario identified limitations identical to those set forth in the June 21, 2013 form. (*Id.* at 571).

On August 24, 2015, NP Rozario completed a Medical Source Statement form related to Plaintiff. (*Id.* at 668-71). NP Rozario indicated on this form that Plaintiff was physically and mentally unable to work. (*Id.* at 669). He opined that Plaintiff's impairments would cause her to be off-task for more than 30% of the workday. (*Id.*). NP Rozario further indicated that Plaintiff could walk less than one city block without rest or severe pain and that she could sit or stand for only ten minutes before needing to change positions. (*Id.*). According to NP Rozario, Plaintiff could sit for less than two hours in an eight-hour workday and would need to walk for ten minutes at five-minute intervals. (*Id.* at 670). NP Rozario further opined that Plaintiff could never lift or carry less than ten pounds, and could never twist, stoop, crouch, squat, or climb ladders or stairs. (*Id.*). He stated that Plaintiff could use her hands bilaterally to grasp objects only 25% of the time and could use her fingers bilaterally for fine manipulations only 20% of the time. (*Id.* at 671). Plaintiff could never use her arms bilaterally to reach. (*Id.*). NP Rozario indicated that Plaintiff's impairments would cause her to be absent from work more than four days per month. (*Id.*).

In her decision, the ALJ accorded little weight to NP Rozario's various opinions. (*Id.* at 38-39). The ALJ explained that NP Rozario's opinions were unsupported by his

own contemporaneous examinations of Plaintiff. (*Id.*). In particular, the ALJ noted that NP Rozario had recorded significant examination findings on only a single occasion, in the context of an acute incident that had caused lumbar spine pain, and that his examinations of Plaintiff had otherwise been unremarkable. (*Id.*). The ALJ further explained that NP Rozario's opinions were also inconsistent with treatment records from Plaintiff's other primary care providers, as well as her rheumatologists and nephrologists. (*Id.*).

The Court finds no error in the ALJ's assessment of NP Rozario's opinion. It is appropriate for an ALJ to accord limited weight to an opinion where it is "inconsistent with [the source's] examination findings." *Glena*, 2018 WL 739096 at *4. In this case, as the ALJ explained, NP Rozario's own examinations of Plaintiff were generally unremarkable, and inconsistent with the severe limitations found in his opinions. NP Rozario consistently observed only minimal abnormalities when examining Plaintiff. (*See, e.g.*, Dkt. 7 at 525, 562-63, 566). Notably, on January 2, 2015, NP Rozario recorded that an inspection of Plaintiff's shoulder revealed no asymmetry or deformity, no limitation in the range of motion, and a normal scapula. (*Id.* at 566). An x-ray of Plaintiff's shoulder the same day revealed a "normal appearing right shoulder." (*Id.* at 574). These objective medical findings offer no support for NP Rozario's assessment that Plaintiff was severely limited in using her upper extremities.

NP Rozario did see Plaintiff on March 20, 2015, for an acute complaint of lower back pain. (*Id.* at 576). On this one occasion, Plaintiff had an antalgic gait, with a limitation of flexion and extension of the lumbar spine due to pain. (*Id.* at 577). However, Plaintiff still showed 5/5 motor strength throughout her extremities and had normal reflexes

and intact sensation, which no motor or sensory deficits noted. (*Id.*). Moreover, at her next appointment with NP Rozario on August 24, 2015, Plaintiff's physical examination results were once again essentially normal, with no back pain noted. (*Id.* at 668-89). It was reasonable for the ALJ to find that this single abnormal exam was insufficient to support the extreme restrictions found in NP Rozario's opinions.

The ALJ also appropriately found that NP Rozario's opinions were inconsistent with the record as a whole. *See, e.g., Ross v. Colvin*, No. 6:13-CV-00755 NAM, 2014 WL 5410327, at *17 (N.D.N.Y. Oct. 21, 2014) (nurse practitioner's opinion was "entitled to lesser weight" because it was "inconsistent with the record as a whole"). As the ALJ explained, treatment records from Plaintiff's other primary care providers and physicians did not support the limitations identified by NP Rozario. (Dkt. 7 at 39). In particular, the ALJ explained that between September 3, 2013, and May 1, 2014, physician's assistant Jordan Christie regularly observed that Plaintiff had no spinal tenderness, intact motor functioning, intact sensation, and normal gait. (*Id.* at 36 (referring to *id.* at 472, 476, 488, 504, 509)). On June 4, 2014, rheumatologist Dr. Prem Tambar reported that Plaintiff had "[n]ormal inflammatory markers" and "[n]egative detailed serological workup and lack of any other significant clinical findings," leading him to conclude that "there does not appear to be any significant systemic involvement" in Plaintiff's claimed impairments. (*Id.* at 35 (referring to *id.* at 513)). NP Kathleen Leigh-Simms observed on August 6, 2014, that Plaintiff had no evidence of active synovitis in her joints, normal gait, intact motor strength and sensory function in all extremities, and no muscle tenderness. (*Id.* at 35 (referring to *id.* at 542)). The ALJ did not err in discounting NP Rozario's opinion, which was highly

restrictive, in light of the largely unremarkable findings consistently observed by Plaintiff's treatment providers. *See Boland v. Comm'r of Soc. Sec.*, No. 1:15-CV-1391 (GTS), 2017 WL 1532584, at *6 (N.D.N.Y. Apr. 27, 2017) (ALJ's decision to give therapist's opinion little weight was supported by substantial evidence where the "marked limitations" set forth therein were inconsistent with the plaintiff's treatment records).

The ALJ in this case thoroughly discussed and considered NP Rozario's opinions, and her reasons for affording them limited weight were proper and well-supported by the record. Under these circumstances, the Court finds no error in the ALJ's decision. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (noting that "the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources,'" as long as she "address[es] and discuss[es] the opinion").

### B. Evaluation of Plaintiff's Credibility

Plaintiff's second and final argument is that the ALJ erred in assessing the credibility of her subjective complaints. For the reasons set forth below, the Court finds no error in the ALJ's credibility assessment.

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *report and recommendation adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great

deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id.*

In this case, the ALJ applied the two-step inquiry. At the first step, she found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that "the objective evidence is inconsistent with [Plaintiff's] statements regarding the extent of her limitations." (Dkt. 7 at 34, 37). Accordingly, the ALJ assessed Plaintiff's credibility, and concluded that there were "several reasons why [Plaintiff's] allegations of debilitating symptoms" were not fully credible. (*Id.* at 41). First, the ALJ noted that Plaintiff had "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*). Second, the ALJ noted that Plaintiff's last employment had ended not because of her impairments, but because of a general layoff at her employer, and that Plaintiff had continued to seek work thereafter. (*Id.*). Third, the ALJ observed that

Plaintiff's treatment had been "routine and/or conservative in nature," consisting essentially of medication and routine follow-up visits. (*Id.* at 41-42).

Plaintiff argues that the ALJ improperly relied upon her activities of daily living in performing her credibility assessment, because "a claimant need not be an invalid, incapable of performing any daily activities, in order to receive benefits under the [Act]." (Dkt. 10-1 at 16). This argument is misplaced. While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(i). In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014). This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.*

Here, the ALJ properly found that Plaintiff's claims regarding her symptoms were inconsistent with the other evidence of record, including her own reports of her activities

of daily living. Despite Plaintiff's claim that her impairments were completely disabling, she also reported that she was able to cook, clean, shop, and provide care to her child, who suffers from Attention Deficit Hyperactivity Disorder. (*See* Dkt. 7 at 37, 234, 374-75). These activities are inconsistent with the severity of symptoms Plaintiff claimed. *See Rusin v. Berryhill*, 726 F. App'x 837, 840 (2d Cir. 2018) (severe limitations claimed by the plaintiff were inconsistent with the plaintiff's report that he "cooked simple meals daily, left the house daily, can drive, and shopped for groceries every two weeks"). As the ALJ also observed, the record indicates that in 2012, Plaintiff was able to take classes and study to be a medical assistant. (*Id.* at 37). In connection with those studies, Plaintiff's orthopedic surgeon approved her plan to participate in an internship that would require "more writing and typing" (*id.* at 715), which is wholly inconsistent with Plaintiff's claims regarding her ability to use her hands.

Plaintiff contends that the ALJ mischaracterized her activities of daily living, because Plaintiff testified that her husband performed most of the cooking and cleaning and because her son spends a large part of the day in school. The Court is not persuaded by these arguments. Plaintiff's testimony before the ALJ was inconsistent with her prior reports, including to the consultative examiner, whom she told that she was able to "cook three times a week, clean three to four times a week, do laundry once a week, and . . . shop[] twice a month," in addition to "provid[ing] daily child care." (*Id.* at 375). It was well within the ALJ's discretion to credit these prior reports by Plaintiff as to opposed to the more restrictive mode of living she reported at the hearing. *See Perozzi v. Berryhill*,

287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) ("An ALJ has discretion to resolve conflicts in the record, including with reference to a claimant's reported activities of daily living[.]").

Plaintiff's argument also ignores the other reasons the ALJ identified for finding her less than fully credible, including Plaintiff's inconsistent statements regarding the termination of her last employment. While Plaintiff claimed in her initial application that she had stopped working due to her medical impairments (Dkt. 7 at 226), she subsequently told the ALJ that she had been laid off due to lack of work (*id.* at 74-75). The inconsistency in these reports inherently calls into question Plaintiff's credibility. *See Morris*, 2014 WL 1451996 at *6. Moreover, an ALJ may properly consider the reasons a claimant stopped working in assessing credibility. *See* Karlsson-*Hammitt v. Colvin*, No. 13-CV-916S, 2014 WL 5500663, at *7 (W.D.N.Y. Oct. 30, 2014) (upholding ALJ's negative credibility assessment in part because the plaintiff stopped working "for reasons unrelated to her allegedly disabling conditions").

The ALJ also correctly noted that Plaintiff had received only conservative treatment for her allegedly disabling impairments. "[A] claimant may be deemed 'less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]'" *Sickles v. Colvin*, No. 12-CV-774 MAD/CFH, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014) (quoting SSR 96-7p). Here, as the ALJ described in detail, the medical treatment undergone by Plaintiff was quite conservative, and not of the type or frequency one would expect for the numerous disabling impairments claimed by Plaintiff. (*See* Dkt. 7 at 41-42).

In sum, the Court finds no error in the ALJ's credibility assessment. The ALJ applied the two-step inquiry and set forth well-supported reasons for finding Plaintiff's

subjective allegations less than fully credible. Plaintiff has not shown that remand on this basis is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: September 26, 2018
Rochester, New York